DOROTHY GAGNON *v.* PLANNING COMMISSION OF THE CITY OF BRISTOL ET AL.
(8757)

DUPONT, C. J., FOTI and LAVERY, Js.

Argued September 24, 1990—decision released April 9, 1991

*JoAnn Paul,* for the appellant (plaintiff).

*Ann T. Baldwin,* assistant corporation counsel, for the appellee (named defendant).

*Alfred F. Morrocco, Jr.,* for the appellees (defendants Jon M. Pose et al.).

FOTI, J. The plaintiff appeals from the judgment rendered dismissing her appeal from the approval by the defendant city planning commission of Bristol (commission) of the application of the defendants, Jon Pose, James Sessions, Dominic Pietrofesa and Josephine Pietrofesa (applicants) for a subdivision allowing two parcels of land on Shrub Road to be divided into eighteen single-family building lots. The court, because the

applicants were subsequently granted an application for a resubdivision from which no appeal was taken, dismissed her appeal as moot. We affirm the dismissal.

Early in June, 1988, the applicants filed their application and public hearings were held. The application was granted and the plaintiff filed a timely appeal. After the appeal from the granting of the application for a subdivision, in December, 1988, the applicants applied for a resubdivision of the property. Notice of a public hearing on the application for the resubdivision was published in the Bristol Press on December 10, 1988, and December 19, 1988. The application was granted on December 21, 1988, following the public hearing, which was not attended by the plaintiff. Notice of the decision of the resubdivision approval was published on December 24, 1988, in the Bristol Press. No appeal to the trial court from the granting of the resubdivision application was ever filed. The applicants filed the resubdivision map and it was subsequently signed by the chairman of the commission and filed in the Bristol land records. On November 13, 1989, the trial court dismissed the appeal of the approval of the original subdivision because there was no longer any practical relief that the court could provide.

The trial court held that the resubdivision controlled the rights of the applicants to develop the land, and, therefore, the plaintiff's appeal from the approval of the original subdivision could not result in any practical relief.

"Mootness implicates the subject matter jurisdiction of this court." *Sadlowski* v. *Manchester,* 206 Conn. 579, 583, 538 A.2d 1052 (1988). "[I]t is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow." *Reynolds* v. *Vroom,* 130 Conn. 512, 515, 36 A.2d 22 (1944); *Con-*

necticut Resources Recovery Authority v. Freedom of Information Commission, 19 Conn. App. 489, 493–94, 562 A.2d 1145 (1989). If no practical relief can be afforded to the parties, the appeal must be dismissed. Garcia v. Brooks Street Associates, 209 Conn. 15, 22, 546 A.2d 275 (1988); Chomko v. Patmon, 20 Conn. App. 159, 161, 565 A.2d 250 (1989).

First, the plaintiff argues that her appeal could have resulted in practical relief because the resubdivision application was conditioned on the outcome of her appeal. She alleges that the court's finding that the resubdivision application was granted unconditionally is incorrect. The plaintiff relies on representations made by the city engineer, a nonvoting ex officio member of the commission. These remarks made during and following the hearing stated that the approval of the resubdivision application would not go into effect until after the plaintiff's appeal was resolved.

"This court will not retry the facts found by the trial court when they are amply supported by the evidence and are not clearly erroneous." Oak Leaf Marina v. Ertel, 23 Conn. App. 91, 94, 579 A.2d 568 (1990); Halepas v. Malerba, 3 Conn. App. 403, 404, 488 A.2d 847 (1985). The trial court made a finding of fact that the commission's final decision on the resubdivision application was unconditional, and that the approval of the subdivision application was therefore subsumed by the approval of the resubdivision application. The court's finding was supported by ample evidence, including remarks by the city planner and the city engineer that were recorded in the minutes of the hearing. Because the court's finding on this issue was supported by substantial evidence and the plaintiff has not carried the burden of showing the court's finding to be clearly erroneous, the finding that the resubdivision application was granted without condition and without

regard to the approval of the subdivision application must stand. See *Oak Leaf Marina* v. *Ertel,* supra, 97. If this finding must be deemed correct, any claimed deficiencies or irregularities in the resubdivision hearing are irrelevant since no appeal was taken from the approval of the resubdivision.

Second, the plaintiff argues that even the unconditional approval of the resubdivision application during the pendency of her appeal is insufficient to defeat her claims. She alleges that the resubdivision application was filed by the applicant to avoid the appellate process, and argues that because the issues raised in her appeal were not addressed at the resubdivision hearing, there is still an actual controversy as to these issues. We do not agree.

The applicants were required to file a resubdivision application by the city's subdivision regulations.[1] The resubdivision application was subsequently granted. Notwithstanding any similarities between the original subdivision application and the resubdivision application, approval of the resubdivision application controls the applicant's rights to develop the parcel. The plaintiff's appeal of the approval of the original subdivision application cannot substitute for a timely appeal from the approval of the resubdivision application. Because there was no appeal of the approval of the resubdivision application as required; see *R. B. Kent & Sons, Inc.* v. *Planning Commission,* 21 Conn. App. 370, 573 A.2d

---

[1] A resubdivision approval is required pursuant to Sec. 1.04 of the subdivision regulations of the city of Bristol when there is a "change in a map of an approved . . . subdivision . . . if such change (a) affects any street layout shown on such maps . . . ." The resubdivision involved the moving of the cul-de-sac about twenty-five feet north of its subdivision location; there was also minor adjustment of property lines in connection with the street shift. The requirement for resubdivision approval is *not limited* to those situations in which one or more of the lots have been conveyed after the approval.

760 (1990); there is no actual and existing controversy regarding its approval. The plaintiff has not and cannot now challenge the power of the commission to act on the resubdivision application on the ground of a lack of statutory authorization. See *Moscowitz* v. *Planning & Zoning Commission,* 16 Conn. App. 303, 313, 547 A.2d 569 (1988). The propriety, correctness or legality of that approval cannot be attacked directly or collaterally at this point; since it is not before us, we will not speculate as to its validity.[2] We will not render judicial opinions on points of law absent an actual and existing controversy. *Butzgy* v. *Glastonbury,* 203 Conn. 109, 115, 523 A.2d 1258 (1987).

The subsequent approval of the resubdivision application, absent a timely filed appeal, prevents the court from affording any practical relief to the plaintiff. The case is, therefore, moot.

The judgment dismissing the plaintiff's appeal is affirmed.

In this opinion DUPONT, C. J., concurred.

LAVERY, J., dissenting. I disagree with the decision of the majority. The approval of the resubdivision application by the defendant Bristol planning commission constituted a void act for four separate and distinct reasons and therefore should not have been allowed to provide a basis for sustaining a collateral attack to moot an appeal that had been properly brought. First, the defendant did not have the statutory authority to approve a resubdivision application based on a subdivision that did not yet exist because it was neither finally approved nor recorded. General Statutes § 8-25

---

[2] Whether the defendant had the statutory authority to approve a resubdivision, and whether the resubdivision hearing required a new wetlands report, and whether the hearing was properly noticed, are not the subject of this appeal.

provides in relevant part that "[a]ny plan for subdivision shall, upon approval . . . be filed or recorded by the applicant in the office of the town clerk within ninety days of the date such plan is delivered to the applicant . . . and any plan not so filed or recorded within the prescribed time shall become null and void . . . . All such plans shall be delivered to the applicant for filing or recording promptly after the time for taking an appeal from the action of the commission has elapsed, and in the event of an appeal, promptly upon the termination of such appeal by dismissal, withdrawal or judgment in favor of the applicant. No such plan shall be recorded or filed by the town clerk or district clerk or other officer authorized to record or file plans until its approval has been endorsed thereon by the chairman or secretary of the commission, and the filing or recording of a subdivision plan without such approval shall be void." Under this section of the statute, it is clear that the approval of a subdivision plan does not become final unless and until an approved map is delivered to the applicant for filing and then is timely filed as a final map. Delivery cannot be made until the period during which an appeal may be taken has elapsed or until a timely appeal has been terminated by virtue of its dismissal, withdrawal, or rendering of a judgment in favor of the applicant.

Our Supreme Court has held that under General Statutes § 8-28 the decision of a planning commission on a subdivision plan is binding and final unless a timely appeal is taken. *Whittaker* v. *Zoning Board of Appeals,* 179 Conn. 650, 661, 427 A.2d 1346 (1980). Thus, the approval process is not complete until the appeal period has run or the appeal is finalized in court, and the planning commission's action has been sustained.

In this case, no final map had been delivered to the applicant due to the pendency of the appeal brought

by the plaintiff. No final approved map was filed. Therefore, no subdivision existed that could provide the basis required for the resubdivision application.

Second, General Statutes § 8-18, which is nearly identical to § 1.04 of the Bristol subdivision regulations, defines a resubdivision as "a change in a map of an *approved* or *recorded subdivision or resubdivision* if such change (a) affects any street layout shown on such map, (b) affects any area reserved thereon for public use or (c) diminishes the size of any lot shown thereon and creates an additional building lot, *if any of the lots shown thereon have been conveyed after the approval or recording of such map . . . .*" (Emphasis added.) The clear and unambiguous language of these statutory definitions requires that an approved or recorded subdivision or resubdivision must exist as a necessary predicate to the filing of a resubdivision application. In addition, a resubdivision is appropriate only if any of the lots have been conveyed after the approval and recording of the map. See T. Tondro, Connecticut Land Use Regulation p. 100.

This interpretation of the statute is consistent with § 1.05 of the Bristol subdivision regulations which provides for a "Revision of a subdivision" in those instances where no affected part of the land has been conveyed. The Bristol ordinance provides that *"Revision of subdivision* as used in these regulations means only a minor change in size of property lines inside of the area insofar as no street entrance or future public property is changed and no affected part of the land is already sold. Such minor change shall not violate in any way the zoning ordinance of the City of Bristol or these regulations."

The purpose of requiring a public hearing on a resubdivision application is to allow any purchaser who took title to a lot in reliance on the approved and filed map

to have an opportunity to be heard on any changes in that map that might adversely affect her. The goal of § 1.05 is to allow a developer to revise lot lines without necessitating the formality of filing a resubdivision application when no conveyances have been made in reliance on the original subdivision map.

In 1967, during debate on an amendment to the definition of resubdivision in General Statutes § 8-18 that would allow neighbors of two adjoining lots to adjust boundaries without filing an application for a resubdivision, Representative Lucille A. Matarese stated: "Under the present law once you have an approved subdivision on file in the town clerk's office *after any one of the lots thereon have been conveyed* any changes which would diminish the size of any lot would automatically constitute a resubdivision and would require an application for approval to be filed . . . ." (Emphasis added.) Conn. Joint Standing Committee Hearings, General Law, Pt. 6, 1967 Sess., p. 1714.

It is clear from the words of the statute and from the legislative intent that it is necessary to have a conveyance out of a subdivision before one can apply for resubdivision. The defendant was without jurisdiction to approve a resubdivision application because the underlying subdivision had not had any lots conveyed out of it, a condition precedent for a resubdivision. The underlying subdivision plan was neither approved nor recorded and did not exist except as an application the approval of which was on appeal.

Third, even if a resubdivision hearing was appropriate, the resubdivision hearing held by the defendant was jurisdictionally flawed in that a new wetlands report was required prior to the approval of the resubdivision application. General Statutes § 8-26 provides in part: "If an application involves land regulated as an inland wetland or watercourse under the provisions

of chapter 440, the applicant shall submit an application to the agency responsible for administration of the inland wetlands regulations no later than the day the application is filed for the subdivision or resubdivision. The commission shall not render a decision until the inland wetlands agency has submitted a report with its final decision to such commission. In making its decision the commission shall give due consideration to the report of the inland wetlands agency."

A review of the December 21, 1988 transcript of hearings held by the defendant commission on the resubdivision application discloses the following colloquy:

"Chairman Mattson: Commissioners, any objections to hearing this, this evening? Mr. Morrocco, do you want to make comments on this?

"Attorney Morrocco: . . . For the records, a Wetlands Permit was issued and I would like to get into that in a minute. That Wetlands Permit concerned the drainage down Shrub Rd. and down into Burlington Ave. None of the lots that had to be resubdivided affects that because they flow in a different direction. But I do want to report to the Commission, I was asked at the last meeting to go back to Wetlands and in going back to Wetlands it appears that—

"Chairman Mattson: That Wetlands is to the previous application, not to this one.

"Attorney Morrocco: Well, it's on this map—

"Chairman Mattson: If this flows in a different direction—

"Attorney Morrocco: It does.

"Chairman Mattson: Then how does it apply?

"Attorney Morrocco: Well it's in the subdivision and it flows in a different direction but I wanted to report

to you, this Commission had asked me to go back to Wetlands to see if we could eliminate that holding . . . ."

This record indicates that no new application was made to the inland wetlands agency on the proposed resubdivision and the commission did not consider a new inland wetlands report prior to its approval of the resubdivision application. Under General Statutes § 8-26, the procedures that must be followed for a resubdivision application approval are identical to the procedures required for subdivision application approval, with the sole exception being that a resubdivision application *requires* a public hearing. General Statutes § 8-26; see also T. Tondro, supra, p. 101.

Finally, although the defendant asserts that proper notice of the public hearing on the resubdivision application was given by the defendant, the record before us is remarkable in the absence of a copy of such notice while copies of all the other notices at issue are included in the record. Testimony of members of the Bristol planning commission on the night of the hearing and alleged approval of the resubdivision application leads to the conclusion that the meeting was not properly noticed. General Statutes § 8-26 provides in relevant part: "No plan of resubdivision shall be acted upon by the commission without a public hearing. Notice of the public hearing shall be given by publication in a newspaper of general circulation in the municipality at least twice at intervals of not less than two days, the first not more than fifteen days, nor less than ten days, and the last not less than two days prior to the date of such hearing, and by sending a copy thereof by registered or certified mail to the applicant."

A review of the record disclosed the following discussion, which occurred between members of the com-

mission on December 21, 1988, the evening of a general public hearing on the resubdivision application in question.

"Mr. Smith: We have an application for a re-subdivision entitled, Nature Center Estates, located, Shrub Rd., proposed owner's name, Connecticut Development, Ltd., 200 Summer St., Bristol CT., proposed developer's name, Jon Pose, 37 Peachtree Lane, Bristol . . . Mr. Chairman, as this is a re-subdivision, a hearing is required on it.

"Chairman Mattson: Well, is it a requirement that a public hearing be set?

"Mr. Smith: No, just that hearing is required. If the Commission desires to hear it tonight, they can do that.

"Chairman Mattson: Does the Commission wish to hear this application this evening? It appears that it's just the adjustment of property lines, Mr. Smith?

"Commissioner Newcity: That's the only problem on it?

"Mr. Smith: Yes.

"Chairman Mattson: Plus decreasing the size of the cul-de-sac?

"Mr. Smith: It's moving the cul-de-sac on Interval Rd., north about 25 ft. and taking a piece of property along that southerly end of the property and proposing to deed it to an adjacent property owner [inaudible] that all of the lots are still conforming by the zoning. Basically it's the same subdivision that the Commission has approved, with the minor lot changes and with the road change.

"Chairman Mattson: Now, my understanding, Alan, maybe you can answer this for me, is that this subdivision is under litigation, is it?

"Mr. Weiner: I believe that's correct.

"Chairman Mattson: What does that do for this public hearing?

"Mr. Weiner: I don't believe that it affects the public hearing. That's not a legal opinion on my part, but I believe that in a real sense they're independent.

"Mr. Smith: Mr. Chairman, that is verified by the opinion we've received from the Corporation Counsel on the previous, I believe it was Wildwood Estates on Mines Road, we had a second application come in for that piece of property and the Corporation Counsel told us it was an independent action. I've discussed this verbally with the Corporation Counsel in that same vein and it was indicated to me that that same opinion applies to this case.

"Chairman Mattson: Okay then Commissioners, are you prepared to hear this, this evening?"

From this discussion and the absence of any evidence to the contrary it is obvious that the hearing on the resubdivision application did not meet the notice requirements articulated in General Statutes § 8-26 for such a hearing. Adequate notice is a jurisdictional issue that is a "prerequisite to any valid and effective action by an administrative tribunal." *Edelson* v. *Zoning Commission,* 2 Conn. App. 595, 599, 481 A.2d 421 (1984). Thus, even if the hearing on the resubdivision application was the appropriate course, the statutory notice requirements for such a hearing were not met and the commission was without jurisdiction to take any action on the resubdivision application. Id.

Action taken by an administrative agency in excess of its statutory authority is void and without legal effect. *Moscowitz* v. *Planning & Zoning Commission,* 16 Conn. App. 303, 313, 547 A.2d 569 (1988). The action

of the defendant was void for the four reasons stated above. Each of those reasons jurisdictionally voids the approval of the resubdivision application. This court should not uphold the dismissal of a duly filed and lawful appeal based on a subsequent action of the defendant planning commission that was void ab initio. The appeal should be heard on its merits because relief can be granted and mootness does not exist.