[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This dispute arises between adjacent property owners, the plaintiffs Crockett and the defendants Caldeira. The area in dispute is the northeastern boundary of the defendants' property which is the southeastern boundary of the plaintiff' property. CT Page 1315 The plaintiffs' claim is that the boundary is approximately 18 feet south of where the defendants assert that it is. Both of these claims rest on a determination of where the southeast corner of the defendants' property is located. The court considered testimony, live and by deposition, demonstrative and documentary evidence over several days of trial. The parties were requested to submit proposed findings of fact and posttrial memoranda. The court expresses its appreciation for the excellent submissions by both parties.
In addition to denying the allegations of the complaint, the defendants assert by counterclaim that 1) they have record title to the disputed eighteen feet or 2) they have title to the disputed eighteen feet by adverse possession. To prove their case in chief, the plaintiffs presented the following witnesses: William Orsine, a licensed surveyor; Leon Kwiatkowski, a licensed surveyor; and John Costello, a licensed engineer and town engineer for the Town of Wallingford from 1981 to 1996. The defendants presented the following witnesses in response: the deposition of Reino A. Karhu, a licensed surveyor employed by Center of Engineering; Charles Timothy Brown, a civil engineer and president of Center of Engineering; Daryl Perkins; Wilson Perkins and Dwight Perkins. As to the counterclaim, the court heard testimony from the plaintiff Robert Crockett, the defendant Eduardo Caldeira, Joseph Layman and the deposition of Wilson Perkins.
 I
The court finds the following facts by a fair preponderance of the evidence.
On April 3, 1974, the defendants took title to their parcel from Joseph Pimentel, who had purchased it from Wilson Perkins. The parcel is described in those deeds and a prior deed as bounded on each four sides "200 feet, more or less," and with a southern boundary "by Old Durham Road." (Exhs. 6, 8 and E).
On March 28, 1990, the plaintiffs took title to their parcel from Joseph Layman, who had purchased it from Vincenzo Verna. The parcel is described in those deeds as bounded on the east 196.00 feet, by the north 207.76 feet, by the south 200.20 feet and by the west 203.83 feet.
In 1992, the Town of Wallingford performed a survey affecting CT Page 1316 the defendants' southern boundary and set a cement monument representing the street line for Old Durham Road, twenty five feet from the centerline of the road. The plaintiffs claim that the monument marks the defendants' southeastern corner and that accordingly the northeastern corner is 200 feet north of the monument. Also in 1992, the defendants had a survey performed and constructed a fence on their northern boundary some 218 feet north of the cement monument and some 200 feet north of an existing iron pipe which the defendants' surveyor, Reino Karhu, determined to be the exact location of the defendants' southeast corner. There is no dispute as to the location of the southwestern or northwestern corners of the defendants' property. The defendants' southwestern corner is located twenty five feet from the centerline of Old Durham Road. The experts, the surveyors and Mr. Brown, the engineer, agree that without an established street line and without contrary documentation, a road includes a setback of twenty-five feet.[1]
Neither of the surveyors who testified on behalf of the plaintiffs performed their surveys on the plaintiffs' behalf. Mr. Orsine performed his survey (Ex. 1) of the Oakwood Estates in 1987. Mr. Kwiatkowski performed his survey of the adjacent Perkins Drive subdivision in 1975. Exhibit 1 shows the plaintiffs' eastern boundary down to the point where the plaintiffs claim it lies. In support of his survey, Mr. Orsine noted that the distance from the northernmost corner of the Oakwood Estate subdivision to the line of Old Durham Road is approximately 1420 feet as noted in the 1953 deed dividing the Oakwood estate property from the Perkins Drive property. That 1420 feet corresponds to where the plaintiffs claim the southeastern corner of the defendants' property lies.
While the witness Leon Kwiatkowski testified regarding the replacement of a disputed iron pipe, the court finds this testimony not sufficiently credible in part because of the passage of time. The court gives no weight to that testimony. Nevertheless, Mr. Kwiatkowski's survey of the Perkins Drive subdivision supports Mr. Orsine's results and reliance upon the 1420 feet from north to south between the two subdivisions. SeeDooley v. Leo, 184 Conn. 583, 586 (1981) ("the trier of fact must determine the credibility of that testimony and may believe all, some, or none of the testimony of a particular witness.").
Mr. Costello, who was town engineer until from 1981 until 1996, testified that in 1992 he set the concrete monument 1420 CT Page 1317 feet from the northern marker as noted in the 1953 deed.
 II
All actions to quiet title are governed by General Statutes §47-31 the provisions of which are mandatory. DeVita v. Esposito,13 Conn. App. 101, 103-04 (1987), cert. denied 207 Conn. 807
(1988); Fanfesti v. Englehardt, 27 Conn. Sup 349 (1967). The statute supersedes any common law action brought to determine record title or to claim an interest in real property.13 Conn. App. at 104.
General Statutes § 47-31 requires that the complaint describe the property in question, state the plaintiff's claim, interest or title and the manner in which the plaintiff acquired the interest, title or claim. It also must name each party claiming an adverse interest or estate. Koennick v. Maiorano,43 Conn. App. 1, 9 (1996). The plaintiffs here have met those requirements.
In addition, the burden of proof is upon the plaintiffs to prove that the boundary is where they claim it to be. Steinman v.Maier, 179 Conn. 574, 575 (1980). It is the strength of the plaintiffs' title, not the weakness of the defendants' upon which the plaintiffs must prevail. Koennicke, 43 Conn. App. at 9. For the following reasons, the court finds that the plaintiffs have met their burden.
The plaintiffs produced deeds that indicate the defendants' southern boundary lies by Old Durham Road. (Exhs. 6, 8 and E). Further, they produced testimony to prove that since the road has not changed over the past fifty years that the setback from the center of the road is twenty-five feet.
The court considers the Old Durham Road a monument as described by the Court in Koennicke v. Maiorano:
 A "monument" when used in describing land, has been defined as "any physical object on the ground which helps to establish the location of the line called for and the term "monument", when used with reference to boundaries, indicates a permanent object which may be either a natural or artificial one. . . . Natural monuments include such natural objects as mountains, streams, rivers, creeks, springs, trees. . . . Artificial objects and monuments consist of marked CT Page 1318 lines, stakes, rocks, fences, buildings and similar matters marked or placed on the ground by the hand of man." 43 Conn. App. at 11.
Treating Old Durham Road as a monument is supported by the reasoning in Chatham v. Brainard, 11 Conn. 60, 80-86 (1835), a case relatively recently relied on by the Supreme Court notwithstanding its age for another proposition in AmericanTrading Real Estate Properties, Inc. v. Trumbull, 215 Conn. 68,72 (1990). In addition, the deeds are consistent in proving the distance from the northern point of the original parcel encompassing Oakwood Estates and the defendants's property to the southern point lying twenty-five feet from the center of Old Durham Road. It is undisputed that defendants' southwestern corner is twenty-five feet from the center of Old Durham Road. Finally, the town of Wallingford set the cement monument in 1992, marking the defendants' southeast corner at that point. (Exh. F).
Reino A. Karhu, the defendants' expert, prepared a survey of the defendants' property in 1992 at the request of the defendants. His designation of the southeastern corner at an iron pipe some 18 feet north of the cement monument is based upon a 1973 survey of the adjoining eastern property and remnants of a stone wall. He also relied on the Orsine and Kwiatkowski surveys to establish the street lines. Mr. Karhu did not use the measurement from the northern point of the entire parcel, and while he acknowledged the general rule that a 25-foot setback from the center line of the road, he rejected its application in light of the adjacent property owner's opinion and surveys. having considered the evidence and weighed the testimony, the court finds that the plaintiffs have proved the allegations of their complaint and that the defendants have failed to persuade the court. The northeastern corner of the defendants' property is 200 feet more or less north of the cement monument which was set by the Town of Wallingford and which lies 25 feet north of the center line of Old Durham Road. The eastern boundary of the plaintiffs' property is 196 feet more or less.
 III
The court turns now to the defendants' claim that adverse possession divests the plaintiffs of title to the disputed eighteen feet.
"`A person who claims title by deed is claiming that he has CT Page 1319 good record title which entitles him, in an action to quiet title, to a judgment of ownership. Loewenberg v. Wallace, 147 Conn. 689, 698, 166 A.2d 150 (1960). Conversely, a person who claims title by adverse possession is claiming that although he does not have record title, his proof of possession which is adverse, open, notorious and continuous for the entire statutory period entitles him, in an action to quiet title, to a judgment of ownership. Ruick v. Twarkins, 171 Conn. 149, 15S, 367 A.2d 1380 (1976); Schlough v. Ruley, 1 Conn. App. 119, 120, 468 A.2d 1272 (1983).' [DeVita v. Esposito, supra, 13 Conn. App. 106]. `The trial court must first determine in which party record title lies, and then, if necessary, determine whether adverse possession has divested the record owner of his title.' Id., 108." Marrin v. Spearow, 35 Conn. App. 398, 402, 646 A.2d 254
(1994).
Konikowski v. Everson, 42 Conn. App. 658, 659-670 (1996).
In order to establish title through adverse possession, the defendants must prove by clear and convincing evidence that the plaintiffs [or their predecessors in title] "shall be ousted from possession and kept out uninterruptedly for fifteen years under a claim of right by an open, visible and exclusive possession of the claimant without license or consent of the [plaintiffs]." OakLeaf Marina, Inc. v. Ertel, 23 Conn. App. 91, 94 (1990), citingCounty Federal Savings Loan Assn. v. Eastern Associates,3 Conn. App. 582, 586 (1985) and General Statutes § 52-575. For the following reasons, the defendants have not met the heightened burden of proof to prove the requisite elements.
While in 1992 the defendants erected a chain link fence along their proposed north boundary, prior to that date there had been a stockade fence that ran along part of the north boundary proposed by the plaintiffs. (Exh. A). The defendants claim that they openly used the land prior to 1992, for fifteen years, by mowing and fertilizing it. The disputed area does not contain any structures, other than the 1992 fence, nor does the defendants' garden extend to any part of it.
Since title by adverse possession is a statutory creation, the doctrine is to be applied strictly. Roche v. Fairfield,186 Conn. 490, 499 (1982). The court here cannot find that the defendants have proved by clear and convincing evidence that they used openly, hostilely and continuously the disputed eighteen CT Page 1320 feet for fifteen years.
Judgment may enter for the plaintiffs on both counts. The defendants are ordered to remove the chain link fence from the plaintiffs' property within sixty days of the termination of the applicable appeal period.
DiPentima, J.