[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This dispute arises between adjacent property owners on New Litchfield Street in Torrington, the plaintiff Richard C. Buika and the defendants Albert M. Gioele and Gloria G. Gioele. The area in dispute is the western boundary of the plaintiff's property which is the eastern boundary of the defendants' property. By amended complaint dated July 18, 1997, in addition to presenting a count to quiet title, the plaintiff claims that the defendants committed intentional and negligent acts of trespass and maliciously erected a fence in violation of General Statutes § 52-570. In addition to denying the allegations of the complaint, the defendants filed a counterclaim alleging that they were absolute owners over the disputed area of property or that they are owners by adverse possession. All of these claims concern an area along the common boundary upon which the defendants constructed a stockade fence.
The court heard testimony over two days. Thereafter, the parties submitted trial memoranda on May 28 and June 11, 1999. The plaintiff presented his case with the testimony of Robert Sterling, a land surveyor who testified to a class A2 standard boundary survey of the property (plaintiff's exhibit 2), the plaintiff's own testimony and, on rebuttal, the testimony of Mary Buika, the plaintiff's mother. The defendants presented their case with the testimony of the defendant Albert Gioele, the testimony of June Noble, the daughter of the individuals who owned the CT Page 9129 plaintiff's property prior to the plaintiff and the testimony of Ronald R. McCarthy, a land surveyor who prepared a survey showing a line of occupation that is not an A-2 standard survey (defendant's exhibit 8). The parties submitted a number of deeds, plot surveys, photographs and videotapes into evidence.
All actions to quiet title are governed by General Statutes §47-31 the provisions of which are mandatory. DeVita v. Esposito,13 Conn. App. 101, 103-04 (1987), cert. denied 207 Conn. 807
(1988); Fanfesti v. Englehardt, 27 Conn. Sup 349 (1967). The statute supersedes any common law action brought to determine record title or to claim an interest in real property.13 Conn. App. at 104.
General Statutes § 47-31 requires that the complaint describe the property in question, state the plaintiff's claim, interest or title and the manner in which the plaintiff acquired the interest, title or claim. It also must name each party claiming an adverse interest or estate. Koennick v. Maiorano,43 Conn. App. 1, 9 (1996). The plaintiff has met these requirements.
In addition, the burden of proof is upon the plaintiff to prove that the boundary is where he claims it to be. Steinman v.Maier, 179 Conn. 574, 575 (1980). It is the strength of the plaintiff's title, not the weakness of the defendants' upon which the plaintiff must prevail. Koennicke, 43 Conn. App. at 9. For the following reasons, the court finds that the plaintiff has met his burden on this count.
The plaintiff submitted a deed that indicated that in 1978 he had acquired title to certain property in Torrington Connecticut that was bounded by the defendants' property on the west. (plaintiff's exhibit 1). The plaintiff also submitted a class A-2 survey of his property prepared in June 1996 by William A. Berglund, a licensed land surveyor, now deceased. Berglund's business was acquired by Robert Sterling who testified that he agreed with the survey, plaintiff's exhibit 2.
The defendants submitted a general location survey (exhibit 8) which does not rebut the plaintiff's evidence as to the boundary set forth in exhibit 2. The court finds by a fair preponderance of the evidence that the common boundary between the parties is as set forth in plaintiff's exhibit 2.
The court now turns to the defendants' claim that adverse CT Page 9130 possession divests the plaintiff of title to the area west of a line marked by a cedar stump as shown in defendant's exhibit 8.
 A person who claims title by deed is claiming that he has good record title which entitles him, in an action to quiet title, to a judgment of ownership. Loewenberg v. Wallace, 147 Conn. 689, 698 (1960). Conversely, a person who claims title by adverse possession is claiming that although he does not have record title, his proof of possession which is adverse, open, notorious and continuous for the entire statutory period entitles him, in an action to quiet title, to a judgment of ownership. Ruick v. Twarkins, 17 Conn. 149, 155
(1976); Schlough v. Ruley, 1 Conn. App. 119, 120
(1983). The trial court must first determine in which party record title lies, and then, if necessary, determine whether adverse possession has divested the record owner of his title.
(Internal quotation marks omitted) Konikowski v. Everson,42 Conn. App. 658, 659-670 (1996), quoting Marrin v. Spearow,35 Conn. App. 398, 402 (1994).
In order to establish title through adverse possession, the defendants must prove by clear and convincing evidence that the plaintiff [or his predecessors in title] "shall be ousted from possession and kept out uninterruptedly for fifteen years under a claim of right by an open, visible and exclusive possession of the claimant without license or consent of the [plaintiff]." OakLeaf Marina, Inc. v. Ertel, 23 Conn. App. 91, 94 (1990), citingCounty Federal Savings Loan Assn. v. Eastern Associates,3 Conn. App. 582, 586 (1985) and General Statutes § 52-575. For the following reasons, the defendants have not met the heightened burden of proof to prove the requisite elements. Since title by adverse possession is a statutory creation, the doctrine is to be applied strictly. Roche v. Fairfield, 186 Conn. 490, 499 (1982). The court here cannot find that the defendants have proved by clear and convincing evidence that they used openly, hostilely and continuously the disputed eighteen feet for fifteen years.
The defendants claim and produced evidence in the form of testimony, photographs and videotapes that they believed that the cedar stump marked the approximate boundary between the properties. There certainly was credible evidence that both the plaintiff and his predecessor in title, Ali Perret, consented to CT Page 9131 the use of that area by the defendants and their family. Because there was consent by the plaintiff, the claim of adverse possession must fail.
The plaintiff seeks damages for the defendants' construction of a stockade fence built along the common boundary, alleging trespass under the common law and a cause of action under General Statutes § 52-570, action for malicious erection of a structure. Under § 52-570,
 An action may be maintained by the proprietor of any land against the owner or lessee of land adjacent, who maliciously erects any structure thereon, with intent to annoy or injure the plaintiff in his use or disposition of his land.
Our Supreme Court has explained how the plaintiff must prove intent as distinguished from motive in order to prevail in this statutory cause of action. In Whitlocke v. Uhle, 75 Conn. 423
(1903), Justice Hamersley discussed the purpose behind the statute.
 The evil was not injury of adjacent land by the use of one's own land, without taking the necessary and reasonable precautions to avert such injury, as may happen in building close to a neighbor's line; such evil is provided for by the common law. It is not the use of one's own land for maintaining a nuisance by which a neighbor suffers damage; that evil is provided for by the common law.
 Still less is it the bickerings, spite, and hatred arising from neighborhood quarrels, it is difficult for any legislation to remedy such evil. Plainly, the real evil consists in the occasional subjection of a landowner to the impairment of the value of his land by the erection of a structure which substantially serves, and is intended to serve, no purpose but to injure him in the enjoyment of his land; and so a new exception is made to the absolute power of disposition involved in the ownership of land, as well as to the absolute submission involved in that ownership to the chances of damage incident to the use by each owner of his own land.
(Italics added.) Id, 426. It is clear from reading the statute and the Supreme Court's interpretation thereof that the plaintiff has not met the elements under the statute because the evidence CT Page 9132 shows that the fence in question was constructed on the plaintiff's land and not the defendant's.[1] Accordingly a cause of action in trespass is more appropriate.
In the second count of the complaint sounding in trespass, the plaintiff alleges that the defendants unlawfully constructed a fence on his property. The elements of a common law trespass action are well established.
 [A plaintiff must show] "ownership or possessory interest in property; the physical invasion, entry or intrusion by defendant which affects the plaintiff's possessory rights; intent to do that which causes the invasion and a direct injury to the plaintiff's property." Caltabiano v. Jimmo, Superior Court judicial district of Middlesex, Docket No. 67609 (May 5, 1995, Higgins, J.), quoting Avery v. Spicer, 90 Conn. 576, 579, 98 A. 135 (1916).
The plaintiff here has met the elements. The court finds that the stockade fence built by the defendant was on the plaintiff's property without his permission. The court further finds that the construction of the fence affected the plaintiff's property rights, and that the construction was intentional. The plaintiff, however, failed to produce sufficient evidence of actual damage to his property. At the time of trial, the fence had been removed and there was no evidence of any expense incurred by the plaintiff regarding the removal or repair of the property. Where there has been no proof of actual substantial damages as a result of the trespass, the court is bound under the law to order some token payment. Maganini v. Coleman, 168 Conn. 362, 364 (1975).
 Some damage necessarily follows any wrongful invasion of another's property. This necessary damage is actual as distinguished from the mere nominal damage involved . . . in some casual and inoffensive tort; . . . but it is nominal as distinguished from any specific damage suffered and proved. In a case like this some damage results from the mere invasion of the plaintiff's rights, and its amount, not being determinable by proof, must be comparatively small in that sense nominal.
(Internal citations omitted.) Kelly v. Ivler, 187 Conn. 31,45-6 (1982). CT Page 9133
Under the facts of this case and the applicable law, no punitive damages or attorney's fees are appropriate. It is clear to the court that the genesis of this suit was not so much the issue of the boundary. Rather these parties, good neighbors for many years, fell into a disagreement or misunderstanding that grew into this litigation over the common boundary. The court has established the boundary between the parties so that future disputes between these parties should be minimized.
Accordingly the court finds in favor of the plaintiff on the first count and in favor of the plaintiff with nominal damages in the amount of $50.00 on the second count; and in favor of the defendants on the third count.
Judgment may enter for the plaintiff plus costs in accordance with this decision.
DIPENTIMA, J.